UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| New York County Dental Society, Second District Dental Society of the State of New York, Greater New York Dental Meeting and Lauro F. Medrano-Saldaña,<br><br>　　　　　　　Plaintiffs,<br><br>　　　v.<br><br>EMed Event Corporation and Terry Grant t/b/a Gentle Dental LI,<br><br>　　　　　　　Defendants. | **Civil Action No.** _____<br><br>Hon.<br>United States District Judge<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, New York County Dental Society, Second District Dental Society of the State of New York, Greater New York Dental Meeting (hereinafter, the "Meeting Plaintiffs") and Lauro F. Medrano-Saldaña (hereinafter, with the Meeting Plaintiffs collectively referred to as "Plaintiffs"), by their attorneys Hodgson Russ LLP, allege on knowledge as to their own acts and otherwise on information and belief as follows:

### NATURE OF THE ACTION

1.　　This is an action for action for trademark infringement, false designation of origin, unfair competition and misappropriation, pursuant to the laws of the United States and the State of New York and for violations of New York General Business Law § 133 and New York Civil Rights Law §§ 50-51. Plaintiffs seek an injunction, damages and related relief.

### JURISDICTION AND VENUE

2.　　This Court has Federal subject matter jurisdiction over the claims asserted in this

1

action pursuant to 28 U.S.C. §§ 1331 and 1338(a) as an action arising out of violations of the Lanham Act, 15 U.S.C. §§ 1051 et seq.; and pursuant to 28 U.S.C. § 1338(b) as an action arising out of claims for unfair competition. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) in relation to Plaintiff's claims under the NY General Business Law and NY Civil Rights Law.

3. Venue is proper, inter alia, pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this district and, on information and belief, a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and has caused damage to Plaintiffs in this district.

4. Personal jurisdiction exists over Defendants because on information and belief, Defendants conduct business in New York and in this judicial district, or otherwise avails themselves of the privileges and protections of the laws of the State of New York, such that this Court's assertion of jurisdiction over Defendants do not offend traditional notions of fair play and due process.

## THE PARTIES

5. New York County Dental Society ("NYCDS") is a 501(c)(6) tax-exempt business league formed by a Special Act of the New York State Legislature as a nonprofit district chapter of the NYS Dental Society existing under the laws of the State of New York having a principal place of business located at 622 Third Avenue, Ninth Floor, New York, NY 10017.

6. Second District Dental Society of the State of New York ("SDDS") is a 501(c)(6) tax-exempt business league formed by a Special Act of the New York State Legislature as a nonprofit district chapter of the NYS Dental Society and existing under the laws of the State of New York having a principal place of business located at 111 Fort Greene Place, Brooklyn, NY

11217.

7. Greater New York Dental Meeting ("GNYDM") is an unincorporated joint committee of the NYCDS and SDDS operates under the supervision and oversight of the Boards of Directors of each of NYCDS and SDDS and under the laws of the State of New York having a principal place of business located at 200 W. 41st Street, Suite 1101, New York, NY 10036.

8. GNYDM is a joint committee of NYCDS and SDDS through which NYCDS and SDDS run their joint annual trade show and meeting. NYCDS and SDDS jointly are the owners of the GREATER NEW YORK DENTAL MEETING trademark and the GREATER NEW YORK DENTAL MEETING design mark  (hereinafter, sometimes referred to collectively the "GNYDM Marks").

9. Dr. Lauro F. Medrano-Saldaña ("Dr. Medrano") is a Doctor of Dental Surgery that maintains an office at 5802 6th Avenue, Brooklyn, NY 11220.

10. EMed Events Corporation ("EMed") is a corporation organized and existing under the laws of the State of Delaware having a registered place of business c/o Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

11. Dr. Terry Grant ("Dr. Grant") is an individual that operates a dentistry practice under the business name "Gentle Dental LI" located at 901 Stewart Avenue, Suite 214, Garden City, New York 11530. Hereinafter, EMed and Dr. Grant are collectively referred to as the "Defendants").

**FACTUAL BACKGROUND**

12. NYCDS was founded in 1860 as a professional society that represents one of the largest groups of dentists in the United States. It has over 2,000 members that practice dentistry in Manhattan (New York County). The society and its members have made a special commitment to uphold its ethical code and practice standards, as well as those of New York State Dental Association and the American Dental Association. NYCDS is an advocate for dental health and raises awareness of oral health for the consuming public. NYCDS issues regular publications to its members and offers educational sessions and socials for its members.

13. SDDS was founded in 1868 as a professional society that represents dentists from Kings County (Brooklyn) and Richmond County (Staten Island). It has approximately 1,500 members. SDDS is a local component of the New York State Dental Association and the American Dental Association. SDDS promotes the art and science of dentistry and works to elevate professional standards while simultaneously raising public awareness. SDDS offers continuing dental education for its members and social events and it acts as a lobbying group to secure the enactment and enforcement of just dental laws.

14. GNYDM is a joint committee of NYCDS and SDDS through which NYCDS and SDDS run their joint annual trade show and meeting under the GNYDM Marks.

15. The GREATER NEW YORK DENTAL MEETING is held annually. The upcoming November 23-28th meeting stands to be the 94th GREATER NEW YORK DENTAL MEETING which is scheduled to take place at the Jacob K. Javits Convention Center as it has since the Javits Center first opened in 1986. The GREATER NEW YORK DENTAL MEETING gives its attendees the complete convention experience: a giant exhibition center that showcases an extensive schedule of educational programs consisting of seminars, essays, workshops, live

demonstrations, and exhibitors that cater solely to the dental industry with the newest technologies and networking opportunities.

16. The GREATER NEW YORK DENTAL MEETING mark and the ![logo] mark have been in use by the Meeting Plaintiffs in association with association services, annual trade shows, meetings, social and networking events, educational materials, publications and educational seminar services for at least 86 and 6 years, respectively.

17. The Meeting Plaintiffs expend significant resources in the advertising and promotion of the GNYDM Marks throughout the United States in interstate commerce and in numerous countries around the world including, but not limited to, Lebanon, Italy, Russia, the United Kingdom, Dubai, Brazil, Mexico, China and Korea. These efforts include advertising and promotion through the GREATER NEW YORK DENTAL MEETING website, trade magazines, direct mail, electronic mail campaigns, and international attendance at dental meetings around the world. In addition, the Meeting Plaintiffs have large numbers of volunteers that assist in getting the word out and generating buzz amongst attendees and exhibitors.

18. The GREATER NEW YORK DENTAL MEETING has been selected by the International Buyer Program of the U.S. Department of Commerce (the "IBP"). The IBP promotes exports by attracting international buyers at leading U.S. trade events and helping them connect with U.S. exhibitors in an effort to create opportunities for U.S. exhibitors in overseas markets. As part of the program, brochures for the GREATER NEW YORK DENTAL MEETING are circulated by U.S. Embassies around the world.

19. The GREATER NEW YORK DENTAL MEETING attracts many high level corporate sponsors whose financial support helps make the GREATER NEW YORK DENTAL

MEETING possible.  Last year, sponsors included such well-known companies including, Align Technology, Inc., Colgate-Palmolive Company, The Proctor & Gamble Company, Philips Oral Care, Ivoclar Vivadent, Inc., and Henry Schein Dental.

20. The GREATER NEW YORK DENTAL MEETING attracts many attendees due to its expansive education programs and Continuing Education classes.  In 2017, there were hundreds of classes/workshops in at least five languages which have received accreditation from both the American Dental Association and the Academy of General Dentistry.  In 2017, the GREATER NEW YORK DENTAL MEETING welcomed approximately 900 speakers, panelists and moderators in relation to its education programs.

21. Over the past ninety plus years, the Meeting Plaintiffs have invested an extraordinary amount of time, effort and expense developing what is now the premier dental conference in North America.  Based upon the oldest records available, by way of example only,, the meeting in 1937 enjoyed 10,000 attendees, the 1949 meeting enjoyed 16,000 attendees, and the 1990 meeting enjoyed 30,000 attendees.  Attendance at the most recent meeting exceeded 52,000 attendees from 151 countries, of which 9,000 attendees were from outside the United States.  The 2017 conference also enjoyed over 1,600 exhibitors from numerous countries around the world. GNYDM's e-newsletter under the GNYDM Marks is circulated to the approximately 200,000 licensed dentists across the United States.

22. As a result of the Meeting Plaintiffs' exclusive and extensive use and promotion of the GNYDM Marks, the GNYDM Marks have acquired enormous value, secondary meaning and widespread recognition both within New York and also within the United States.  As a result of the extensive and continuous use of the GNYDM Marks in connection with the advertisement and promotion of the GREATER NEW YORK DENTAL MEETING, consumers have come to

recognize and identify the GNYDM Marks as representative of the quality events and services provided by Meeting Plaintiffs. As a result, Meeting Plaintiffs have gained significant common law rights in the GNYDM Marks.

23. The Meeting Plaintiffs' efforts, the quality of the Meeting Plaintiffs' services, their marketing efforts, the word of mouth by attendees and exhibitors as well as unsolicited press coverage have prominently placed the GNYDM Marks in the minds of the consuming public and they associate the GNYDM Marks solely with the Meeting Plaintiffs.

24. The GREATER NEW YORK DENTAL MEETING trademark was previously registered on the Principal Register of the United States Patent and Trademark Office from 2003 through 2014 when it was inadvertently not renewed.

25. Use of the GNYDM Marks have been continuous in interstate commerce and not discontinued.

26. The GREATER NEW YORK DENTAL MEETING generates substantial revenue for the Meeting Plaintiffs.  As a result, the GNYDM Marks, together with the goodwill associated therewith are of inestimable value to the Meeting Plaintiffs.

27. The Meeting Plaintiffs have engaged and continue to engage in interstate as well as international activities designed to promote the GNYDM Marks and the services and goodwill associated therewith.

28. Dr. Medrano is a dentist that maintains his private office in Brooklyn, New York. He has been listed in TopDentists since 2012.  He has been a member of SDDS since 1997.  Dr. Medrano is also a past president of SDDS.  Dr. Medrano is currently the General Chairman of the GREATER NEW YORK DENTAL MEETING.

**DEFENDANTS' WRONGFUL ACTS**

29. Long after the Meeting Plaintiffs adopted and made use of the GNYDM Marks and at least as early as June 5, 2018, Defendants made the decision to capitalize on the Meeting Plaintiffs' creativity, ingenuity and hard work by acquiring the www.newyorkdentalconference.com domain name ("Infringing Website") and by advertising, soliciting offering for sale and selling attendee registration, exhibitor opportunities and educational classes for a dental conference under the NEW YORK DENTAL CONFERENCE and design mark

 (hereinafter, the "Infringing Mark").

30. The Infringing Website was acquired by Vamsimadhav Korrapati, the Chief Operating Officer of EMed. Based upon recent news accounts, Dr. Korrapati was sentenced to prison in July 2018 for a probation violation in a long-fought case in which he was originally accused of child molestation.

31. EMed's website (EMedEvents.com) claims that it is the largest CME and Medical conference listing website in the world. It touts that it has a targeted email campaign audience of over 500,000 physicians and health care providers, strategic banner ad promotions to more than 350,000 monthly visitors, search media marketing on Twitter, LinkedIn and Facebook, Search Engine Optimization, reporting on services provided, conference ticket registration services, and options to select location speakers, specialty travel and more.

32. Dr. Grant is an individual that operates a dentistry practice under the business name "Gentle Dental LI." He has attended Plaintiffs' GREATER NEW YORK DENTAL MEETING from at least 2013 through 2017. On the EMed website, Dr. Grant is listed as an

8

Advisor to the EMed Management Team. On the Infringing Website, Dr. Grant is listed as being on the Organization Committee and his Gentle Dental practice is listed as a sponsor to the event.

33. According to the NYS Department of Education Office of Professions website, Dr. Grant's license to practice dentistry was suspended (subject to a 2 year stay) and he was placed on probation for a 2 year period in 2010 as a result of pleading guilty to Attempted Falsifying Business Records in the 1st Degree, a class A misdemeanor, stemming from the alleged submission of false insurance claims in relation to his dental practice.

34. The Defendants' conference under the Infringing Mark has been scheduled to take place October 27 through October 28, 2018 at a conference center located on the St. John's University campus in New York City (hereinafter, the "Infringing Conference"), a mere 28 days before the GREATER NEW YORK DENTAL MEETING in New York City.

35. Defendants' Infringing Mark and the GNYDM Marks are remarkably similar and confusingly similar to one another as shown below.

| **GNYDM Mark** | **Infringing Mark** |
|---|---|
| GREATER NY DENTAL MEETING 2018 | NEW YORK DENTAL CONFERENCE NYDC -2018 |

36. Both marks use the Statue of Liberty as the dominant focal point or design feature as well as a contrasting light blue/dark blue and white colors.

37. Both marks make use of the terms NY DENTAL or NEW YORK DENTAL

9

and both marks accentuate the 2018 in large print at the bottom of the logo.

38. In an effort to foster confusion among consumers and the trade as between the GREATER NEW YORK DENTAL MEETING and the Infringing Conference, Defendants have created the Infringing Website at https://www.newyorkdentalconference.com/ emblazoned with the Infringing Mark on the top left portion of the website pages which is in the identical location used by the Meeting Plaintiffs' website. Pictures of the parties respective Home Pages can be seen in Exhibit A.

39. Further evidence of Defendants' bad faith can be seen in its copying of the actual text from various pages from the GNYDM website. Examples of this copying can be found on Defendant's Registration page, Conduct Policy page and FAQ, or frequently asked questions page. Copies of screen shots and copies of the relevant website pages are attached hereto as Exhibit B.

40. As a result of this blatant copying, it seems clear that the purpose of the Infringing Conference is the same as the GREATER NEW YORK DENTAL MEETING namely, to promote a giant exhibition center that showcases an extensive schedule of educational programs consisting of seminars, essays, workshops and live demonstrations, exhibitors that all cater to the dental industry, the newest technologies and networking opportunities and to obtain registration from attendees and exhibitor. Moreover, the Infringing Conference has been scheduled a mere 28 days before the GREATER NEW YORK DENTAL MEETING in order to capitalize on GNYDM's normal attendees and exhibitors that are misled as to the source, origin, sponsorship and/or affiliation of the Infringing Conference.

41. In addition to the use of the GNYDM Marks, Defendants advertised and marketed the education classes at the Infringing Conference to have accreditation for continuing education from the American Dental Association ("ADA") under its Continuing Education Recognition

Program ("CERP"). We have been informed that no such accreditation was provided and in response to a cease and desist demand Defendants removed the CERP and ADA trademarks from the Infringing Website which was being used without authorization.

42. Defendants have also advertised and marketed the education classes at the Infringing Conference to have accreditation for continuing education from the Academy of General Dentistry ("AGD") under its Program Approval for Continuing Education ("PACE"). As of the date of this Complaint, the AGD website fails to list Defendants as an accredited provider. As such it would Defendants are using the AGD trademarks without authorization as well.

43. To play up a fictitious association between the Infringing Conference and the GREATER NEW YORK DENTAL MEETING for consumers and the trade and to increase business from paid attendees, exhibitors and sponsors, Defendants knowingly posted Dr. Medrano's name and image on the Infringing Website without written consent. Dr. Medrano is a past president of SDDS and is now the Chairman of GNYDM.

44. Defendants have violated New York Civil Rights Law § 50-51 by invading the privacy of Dr. Medrano and misappropriating his name and image and publishing same on the Infringing Website to suggest that Dr. Medrano was employed by Defendants or that he endorsed the Infringing Conference.

45. Dr. Medrano never authorized Defendants to use his name or image to advertise and promote the Infringing Conference. At no point did Defendants ever compensate Dr. Medrano to use his name or image.

46. Internet searching for the GREATER NEW YORK DENTAL MEETING also reveals additional efforts to cause confusion among consumers and the trade by Defendants. Specifically, searches for the GREATER NEW YORK DENTAL MEETING on Google.com

reveals that Defendants are also advertising and promoting the GREATER NEW YORK DENTAL MEETING on its EMedEvents.com website. The search results displayed below only enhance the likelihood of confusion or mistake whereby prospective and loyal attendees of the GREATER NEW YORK DENTAL MEETING could mistakenly sign up for the Infringing Conference:



47. Defendants' use of the Infringing Mark and its various unscrupulous advertising methods are intended to suggest, mislead and confuse consumers into believing that the Defendants and their upcoming meeting is associated with, authorized by, endorsed by or sponsored by the Meeting Plaintiffs.

48. The Meeting Plaintiffs are informed and believe and thereon allege that Defendants intended early on to use and trade on the Meeting Plaintiffs' goodwill and reputation to promote their own convention a mere 28 days earlier than the Meeting Plaintiffs' 94 year old event. Defendants understood that the Meeting Plaintiffs' goodwill and reputation are embodied in the GNYDM Marks and that the marks have substantial value. Defendants intentionally used

12

the Infringing Mark and marketing materials derived from the Meeting Plaintiffs' website in such a way that the Meeting Plaintiffs' goodwill and reputation would be transferred to Defendants and their Infringing Conference in the minds of consumers.

49. Defendants' use of the Infringing Mark in association with a deliberate marketing campaign and the Infringing Website was designed to deceive and confuse consumers. Defendants' use of the Infringing Mark is causing irreparable harm to the Meeting Plaintiffs by confusing and misleading consumers as to the source of the Infringing Conference. In undertaking the deceptive actions described herein, Defendants intentionally confused and mislead consumers as to the source, origin, sponsorship and/or affiliation of the Infringing Conference.

50. Through these actions, Defendants have, among other things, willfully and in bad faith committed the following, all of which have caused and will continue to cause irreparable harm to Plaintiff: infringed the GNYDM Marks; engaged in unfair competition; used Dr. Medrano's image without authorization and violated his right to privacy and publicity; and unfairly and unjustly profited from such activities at Plaintiffs' expense.

51. Unless enjoined, Defendants will continue to cause irreparable harm to Plaintiffs.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
Federal Trademark Infringement, False Designation of Origin
and Unfair Competition under
(Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a))**

52. Plaintiffs repeats and reallege each and every allegation set forth in paragraphs 1 through 51 above as if fully set forth herein.

53. Defendants' actions described above and its use of a mark confusingly similar to the GNYDM Marks in connection with the marketing, advertising, promotion, distribution, offering for sale and sale of Defendants' meeting and associated services constitutes infringement,

13

unfair competition and the use of false designations of origin and false descriptions and representations falsely suggesting that Defendants' meeting and services are connected with, sponsored by, endorsed by, affiliated with, or related to the Meeting Plaintiffs in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54. As a direct and proximate result of Defendants' actions, Defendants have damaged, and will continue to cause damage to the Meeting Plaintiffs' goodwill and the goodwill associated with the GNYDM Marks as well as the Meeting Plaintiffs' meeting and services associated with those marks. Moreover, Defendants' actions have caused, and will continue to cause, irreparable harm to the Meeting Plaintiffs and to the public which is deceived as to the source and sponsorship of Defendants' meeting and services, and deceived as to the nature, characteristics and qualities of the meeting and services offered by Defendants, unless restrained and enjoined by this Court. The Meeting Plaintiffs have no adequate remedy at law to prevent Defendants from continuing its infringing, unfair and unlawful actions and from injuring the Meeting Plaintiffs.

55. As a further direct and proximate result of Defendants' actions, the Meeting Plaintiffs have been, and will continue to be damaged and suffer irreparable harm, which if not enjoined will cause immediate and imminent irreparable injury and monetary loss in an incalculable amount.

**SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS**
**Use of Name with Intent to Deceive**
**(N.Y. Gen. Bus. L. §133)**

56. Plaintiffs repeats and reallege each and every allegation set forth in paragraphs 1 through 55 above as if fully set forth herein.

57. Defendants' actions described above have been undertaken with the intent to deceive the public as to the origin, sponsorship, or approval of the meeting and associated services of Defendants in violation of N.Y. Gen. Bus. L. §133.

58. As a direct and proximate result of Defendants' actions, Defendants have damaged, and will continue to cause damage to the Meeting Plaintiffs.

59. The Meeting Plaintiffs have no adequate remedy at law and the Meeting Plaintiffs have been, and will continue to be damaged and suffer irreparable harm, which if not enjoined will cause immediate and imminent irreparable injury and monetary loss in an incalculable amount.

### THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS
### (Common Law Trademark Infringement, Unfair Competition And Misappropriation)

60. Plaintiffs repeats and reallege each and every allegation set forth in paragraphs 1 through 59 above as if fully set forth herein.

61. Defendants' actions described above have constitute trademark infringement unfair competition and misappropriation of the GNYDM Marks in violation of the common law of the State of New York.

62. Defendants' actions described above have at all times relevant to this action been willful and in bad faith.

63. As a direct and proximate result of Defendants' actions, Defendants have damaged, and will continue to cause damage to the Meeting Plaintiffs.

64. The Meeting Plaintiffs have no adequate remedy at law and the Meeting Plaintiffs have been, and will continue to be damaged and suffer irreparable harm, which if not enjoined will cause immediate and imminent irreparable injury and monetary loss in an incalculable amount.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANTS
### (under New York Civil Rights Law § 50-51)

65. Plaintiffs repeats and reallege each and every allegation set forth in paragraphs 1 through 64 above as if fully set forth herein.

66. Defendants have violated New York Civil Rights Law § 50-51 by invading the privacy of Dr. Medrano by misappropriating his name and image and publishing same on the Infringing Website which made it appear that Dr. Medrano was employed by Defendants or endorsed the Infringing Conference.

67. The Infringing Website is designed to attract business namely to obtain paid attendees, exhibitors and sponsors and to generate revenue to Defendants. Upon information and belief, Dr. Medrano's name and image did attract business for Defendants.

68. At no point did Defendants ever receive permission or consent, be it written or otherwise, to use any Dr. Medrano's name and image on the Infringing Website.

69. Defendants were at all relevant times aware that it never received any permission or consent from Dr. Medrano to use his name or image on any website or on any other medium, in order to promote the Infringing Conference.

70. At no point did Defendants ever compensate Dr. Medrano to use his name or image.

71. No applicable privilege or authorization exists for Defendants' use of Dr. Medrano's name or image.

72. Due to Defendants' violation of Dr. Medrano's rights of privacy and publicity under §§ 50 and 51 of the N.Y. Civil Rights Law, Dr. Medrano has been damaged in an amount to be determined at trial, exclusive of punitive and exemplary damages.

73. In addition, and pursuant to § 51 of the N.Y. Civil Rights Law, Dr. Medrano hereby

requests an Order permanently enjoining Defendants from violating his right to privacy and publicity.

74. In addition, and likewise pursuant to § 51 of the N.Y. Civil Rights Law, Dr. Medrano hereby requests an award of punitive damages, in an amount to be determined at trial, due to Defendants' knowing and intentional violation of his statutory rights to privacy and publicity.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demands judgment as follows:

1. Preliminarily and permanently enjoining and restraining Defendants, their respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation with them, from:

   a. Using or registering any word(s), name(s), mark(s), logo(s), design(s), domain name(s), alone or in combination that is/are confusingly similar to the GNYDM Marks, including, the Infringing Mark and the www.newyorkdentalconference.com domain;

   b. Representing by any means whatsoever, directly or indirectly, that there exists any connection, affiliation, association, or sponsorship relationship between Defendants, their goods or services, or any activities they have or will undertake, and Plaintiffs or the GREATER NEW YORK DENTAL MEETING;

2. An Order directing Defendants, their respective subsidiaries, affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those

in active concert or participation with them including, but not limited to meeting exhibitors, sponsors, and attendees to:

    a. Remove and cancel all placements of any advertising in any media or format bearing or displaying the Infringing Mark alone or in combination, that is/are confusingly similar to the GNYDM Marks, or used in a manner that is likely to cause confusion with the GNYDM Marks;

    b. Render the Infringing Website inoperable; and

    c. discontinue from making any use of the Dr. Medrano name and photograph.

3. An Order directing Defendants to file with this Court and serve on Plaintiff's attorneys, ten (10) days after the date of entry of any injunction, a report in writing and under oath setting forth in detail the manner and form in which they have complied with the court's injunction;

4. An Order requiring Defendants to pay Plaintiffs compensatory damages in an amount as yet undetermined caused by the foregoing acts of infringement, false designation of origin, unfair competition, and misappropriation.

5. An Order requiring Defendants to pay Dr. Medrano compensatory and exemplary damages.

6. Awarding Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York  **HODGSON RUSS LLP**
September 12, 2018

By: /s/ Neil B. Friedman

Neil B. Friedman
Ryan A. McGonigle
Attorneys for Plaintiff